IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

HARRISON DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

DEC 17 2010

CHRIS R. JOHNSON, CLERK

BY
DEPUTY CLERK

**DAVID STEBBINS**                                                           **PLAINTIFF**

vs.                                *10-3123*

**WAL-MART STORES, INC.**                                    **DEFENDANTS**

## MOTION TO CONFIRM ARBITRATION AWARD

Now comes Plaintiff David Stebbins, who respectfully moves for the court to confirm the following arbitration award.

Before I begin, allow me to warn you: I can perceive a number of problems that you might have with this case, at first glance, but please continue to read on, and you will soon find out that my case is not as frivolous as you think.

On Tuesday, November 8, 2010, at approximately 8:36PM, I sent an email to the defendants. This email was a formal offer for a contract, which stated, among other things, the following:

1. The contract is entered into if they initiate communications with me, for any reason. There were other actions they could perform to accept this contract, but this is the action they *did* perform. Therefore, whether or not I could have bound them if they performed any of the other actions, is a moot point. **Again, please read the enclosed brief, before you make any rash decisions.**

2. We must refer all legal disputes, not just those related to this contract, to arbitration, using the services of www.net-arb.com, an online arbitration firm that gives arbitration hearings for as low as $299. This is the mutual consideration needed to form a contract – we *both* save time and money in any legal disputes between us, using arbitration. This applies to both of us, and, therefore, there is sufficient consideration. In fact, the consideration provided in arbitration is so blatant that it often stands alone as its own contract (when we arbitrate cases on a case-by-

case basis, the arbitration agreement stands alone as its own contract, yet is still perfectly valid).

3. If they do not accept the arbitration invitation with 24 hours of receiving it, I automatically win, regardless of the merits of the case. **Again, Your Honor, please hear this motion out, in its entirety, before ruling on it.**

On the date of Wednesday, November 17, 2010, Wal-Mart sent me an email stating that my case had been moved to the regional headquarters, and I was invited to call them to settle the issue.

I sent an email to Wal-Mart *again*, on the date of Sunday, November 21, 2010, reiterating that I have sent them a contract with them, and that initiating communications with me, in any way, would cause them to accept. More details will be provided in the brief.

On the date of Wednesday, November 24, 2010, Wal-Mart emailed me *again*, stating, once again, that the case has been turned over to the regional office, and I was invited to call the regional headquarters to settle the matter.

For reasons that will be explained in the brief, this causes them to be bound. When they responded, a second time, they ran out of excuses. Details will be provided in the brief.

Later that day, on Wednesday, November 24, 2010, I filed a case against Wal-Mart, using www.net-ARB.com as the arbitration firm, per the arbitration agreement. According to the contract, they had until November 27, 2010 to accept the arbitration invitation, or else I win, automatically. The contract gave a time limit of 24 hours after they receive it, but it typically takes the Wal-Mart support team 48 hours to sift through all the emails, and finally get around to reading mine.

Rather than accept the invitation to arbitrate within the specified time limit, they did not accept it at all! Net-ARB, themselves, arbitrarily (no pun intended) closed the case on December 6, 2010, which was four times the time limit.

Let me put it this way: In litigation, parties typically have 30 days to respond to a request for admissions, otherwise all the facts that they failed to respond to were admitted. The court might go easy on them if they were a few days late, but if they take four months to respond, that's it; game over.

Likewise, Wal-Mart took four times the allotted time limit, and still did not accept the invitation to arbitrate.

I now wish to invoke the forfeit victory clause. For reasons explained in the brief, I do not feel that the forfeit victory clause was unconscionable, because it is, essentially, nothing more or less than the arbitration equivalent of a default judgment. In any event, the validity of the forfeit victory clause is something that the arbitrator must decide.

I respectfully move to withhold the actual nature of the arbitration award that I was seeking (and that I obtained, per the forfeit victory clause), until I receive confirmation that the arbitration award will be confirmed. I mean no disrespect to you, Your Honor, but the nature of the arbitration award would probably cause you to be subconsciously biased against me. I am not saying that you are incompetent; I am saying that you are human.

Therefore, with all due respect, I move for permission to withhold the nature of the arbitration award I was seeking, for now. Once the court has promised to confirm the arbitration award, assuming I can prove its nature, then, and only then, will I willingly prove its nature. I do not feel that this is too much to ask, as a court is supposed to disregard the nature of the arbitration award when deciding its comfirmability, anyway; this merely ensures that you will not subconsciously consider its nature.

Wherefore, I respectfully pray that you promise to confirm the arbitration award that I sought, on the date of November 24, 2010, so long as I can prove the nature of said arbitration award.

Also, as you can see, I am applying for leave to proceed in forma pauperis. If this motion is granted, please have the Marshal execute the Service of Summons.

Sincerely,

David Stebbins

*David A. Stebbins* (signature)

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

HARRISON DIVISION

**DAVID STEBBINS**                                                                           **PLAINTIFF**

vs.

**WAL-MART STORES, INC.**                                             **DEFENDANTS**

## BRIEF IN SUPPORT OF MOTION

    Comes now Plaintiff David Stebbins, who submits the following brief in support of the enclosed motion to confirm an arbitration award.

    First, I would like to cover the basics. There are seven elements that a contract must possess in order to be valid and enforceable in a court. These elements are:

1. Offer
2. Acceptance
3. Consideration
4. Intent to be legally bound
5. Capacity (meaning, both parties must be capable of contracting)
6. Meeting of the minds
7. Legal (e.g. hitman contracts are not enforceable)

    I assume that offer and capacity are not in dispute. Therefore, I will not comment on them beyond this two-sentence paragraph.

    I will now move onto the second element of a contract: Acceptance.

### Wal-Mart accepted the contract on November 24, 2010.

    As stated in the motion, Wal-Mart contacted me to discuss a matter that may or may not be directly related to the contract. The contract explicitly stated that they agree to the terms, in the event that they initiate communications with me.

At first glance, this seems unconscionable. Wal-Mart does not even have so much as the opportunity to negotiate, correct?

To answer that question, first allow me to set the stage with some binding precedent: In 1999, in the employment discrimination case of Stafne v. Trevilla of New Brighton, Inc. (Case No. 99-3562), the United States Court of Appeals for the Eighth Circuit declined to rule on Ms. Stafne's plight regarding the judge's misallocation of the burden of proof in the "direct threat" exception. The Eighth Circuit Court of Appeals felt that the issue was moot, as Ms. Stafne failed to even establish a prima facie case of discrimination, meaning that she would have lost anyway. It took another seven years, in the 2006 case of EEOC v. Wal-Mart Stores, Inc. (Case No. 06-1583), when this question actually became pertinent, that the Eighth Circuit Court of Appeals actually decided to rule on it, and state that the defendant holds the burden of proof.

I say that to say this: Even though a legal question may seem important, and should be answered, the Stafne case sets binding precedent that a court must disregard all moot points, even if they appear pertinent at first glance, and render decisions only on points that will actually make or break the outcome of the case at hand.

To that end, I pose this question: If Wal-Mart had responded with either an unambiguous rejection, or a counter-offer, would they have still been bound? We don't know; we don't care. The court need not rule on whether they could have been exempt if they had contacted me, but only to explicitly reject the offer, or make a counter-offer, because they did neither. Wal-Mart initiated communications with me, only to invite me for more communications.

It would be as if I emailed a friend of mine, with this formal offer for a contract, and, being the smartypants frat boy that this friend is, he responded saying "I'M COMMUNICATING WITH YOU! I'M COMMUNICATING WITH YOU!" over and over again. At that point, he probably would be deemed to have accepted the contract, even if the court would not have found acceptance if he made a genuine attempt to make a rejection or counter-offer, correct?

For this reason, I respectfully move that you expressly save, for another day, the question of whether or not an unambiguous rejection or counter-offer would have been deemed an acceptance of this contract, and, instead, rule on whether or not the actions they did take signified acceptance.

To that end, allow me to cite a persuasive precedent. This case is called Ticketmaster II v. Tickets.com, and took place in the United States District Court for the Central District of California. I will hereby abbreviate this case as "the Tickets case" or simply "Tickets" from here on out.

Tickets concerned a browse-wrap agreement – an online contract that binds the parties simply by browsing on that website. Browse-wrap agreements are distinguished from click-wrap agreements, which require the user to actually check a box that says "I agree to the terms of service," prior to creating an account on that website. Click-wrap agreements are typically enforced quite consistently, but browse-wrap agreements are much more controversial.

However, Tickets seems to shine some light on that issue. The defendants in the case managed to get the claim dismissed, yes, but the court explicitly stated that the reason it dismissed the case was because the plaintiff had yet to prove that the defendants had actual knowledge of the terms and conditions of using the website.

This seems to hint at a critical matter of law: While you might be able to escape liability for a contract that you did not even see, once the plaintiff proves that the defendant did see the contract, and, after seeing the contract, still performs actions that signify their acceptance, then that's it; game over. Once the defendants in a contract suit see a contract (such as a a browse-wrap agreement, or a sign posted on a main door that says "Read this before entering,") and still perform actions that the contract states will signify acceptance, then they accept the contract, plain and simple. At that point, lack of acceptance is not going to get the defendants very far; they will have to plead something else, such as the lack fo a different element, and/or an affirmative defense.

For example, in computers, there is a concept called "cookies." These monitor everything you do on a website; they are designed to give the surfer a customized experience, based on the surfer's

unique surfing habits. However, in order to know about the surfer's unique surfing habits, the websites must monitor their surfing. This is accomplished with a small piece of software called "cookies."

Therefore, if a plaintiff in a breach of contract case concerning a browse-wrap agreement managed to use cookies to prove that the defendant had, at some point, read the terms of service, and did *not* immediately navigate away from that website, and never return, then the reasonable person may assume that they accepted the terms of service.

However, holding a defendant to a browse-wrap agreement does not necessarily have to be so hard to prove. If the website looking to enforce a browse-wrap agreement had a link to their terms of use, not at the bottom of every webpage on their site, but at the top, then it would still be a valid and enforceable contract. The browsers do not have to click on the terms; they were in plain view, and that is enough.

Another example is a sign posted on a door that states "Read this before entering." If the sign is clearly visible, to the point where any reasonable person would see it, even if they do not stop and read it, then it is valid. At that point, if a person walks through the door, he will have accepted the terms stated on that sign, would he not? If security cameras showed that he actually stopped to read the sign, that would merely serve as a *ad abundantiam* – adding strength to an already valid case.

As I stated before, Wal-Mart performed an action that signified their acceptance to my contract on Wednesday, November 17, 2010. I reminded them of exactly what they were getting themselves into, on November 21, 2010, and then, on November 24, 2010, they performed actions that signified their acceptance to the contract, *again*!

On November 21, I laid everything out in black and white. I held nothing back. Even if they did not bind themselves on November 17, they definitely did on November 24. There are no more excuses.

Simply put, Wal-Mart accepted the contract, and that's all there is to it. Now, we move onto the third element of a contract: Consideration.

### Wal-Mart and I must arbitrate all legal disputes.

First, allow me to cite binding precedent: The Supreme Court case of Buckeye Check Cashing Inc. v. Cardegna (to be abbreviated as "Cardegna" from here on out) states, without ambiguity, that, if a contract contains an arbitration clause, the arbitrator must decide the validity of the contract, unless the arbitration clause itself is being challenged.

The issue in dispute involved legality of a contract (violating Florida's usury laws), but the majority opinion clearly mandated, and I quote, "a challenge to the <u>validity</u> of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court." The word "validity" is underlined for emphasis.

The validity of a contract encompasses all seven elements of a contract.

Therefore, the consideration of the contract, in its entirety, is out of your hands. You must look at the contract as if it stated nothing but the following:

"By initiating communications with me, in any way [other than to explicitly reject this contract], you hereby agree to submit all legal disputes with me – not just those related to this contract – to online arbitration, using the services of www.net-arb.com."

That is it. That is all you can consider in making your ruling. Even the validity of the forfeit victory clause is out of the court's hands. In the event that there is a dispute as to the validity of the forfeit victory clause, it is still something that the arbitrator must decide.

Therefore, there is sufficient consideration. We both save time and money by referring all legal disputes to arbitration, unless the legal disputes at hand is not referable to arbitration. That, in and of itself, is consideration. In fact, the consideration in an agreement to arbitrate is so blatant that it can often stand alone as its own contract (i.e. when parties agree to arbitrate a legal dispute that has already arisen, and only agree to arbitrate that one case).

Conclusively, there is sufficient consideration – albeit peppercorn consideration - in this contract, up to the point that the court is authorized to decide. Now, we move on to the fourth element

of a contract: Intent to be legally bound.

### A reasonable person would have intended to arbitrate all cases with me.

Allow me to set the stage, not with binding precedent, or even persuasive precedent, for that matter, but with common sense that any jurist – even an amateur one, such as myself – would know: Intent to be legally bound is not based on each parties' subjective intent, but on the common law doctrine of the reasonable person. If a defendant in a contract case claims that he never expected the plaintiff to actually sue him over this contract, that is just his tough luck. A reasonable person would realize that there is an intent to be legally bound. If the court looks at each parties' subjective intent, do you have any idea the kind of floodgates you would be opening? Anybody could escape liability for virtually any contract, by merely claiming that they did not intend to be legally bound, and, then, it would be the plaintiff's neigh impossible burden to prove that the defendants did intend to be legally bound.

This burden is much easier to prove if the contract explicitly states that the parties agree to be bound. This contract did, indeed, state the ability to be bound. Therefore, there was an intent to be legally bound. Wal-Mart is better off pleading the lack of some other element of a contract, or some other affirmative defense.

As capacity is not in dispute, by any stretch of the imagination, I now move to the sixth element of a contract: Meeting of the minds.

### Two reasonable people would have had a meeting of the minds

Again, as with the case of intent to be legally bound, we must look to the objective standard of the reasonable person, not the subjective standard of the parties involved.

My original offer, as well as my reiteration, was clear and unambiguous. The contract offer that I made is in the same language that I have seen numerous contracts be in. No reasonable person, upon actually reading the contract (which, as I have established by citing the Tickets case, is a lot more moot than you may initially give it credit for) would have been confused as to the terms. Instead, it is much

more plausible that Wal-Mart committed a unilateral mistake. However, as I will soon explain, the affirmative defense of "unilateral mistake" is not a valid affirmative defense.

I now move on to the seventh and final element of a contract: Legality.

### It is legal to refer civil disputes to arbitration.

As I have previously stated, the arbitration agreement is all that you have jurisdiction to consider. As a direct result, you must consider the legality of the arbitration clause, alone. In fact, the very case that sets binding precedent on this issue – Cardegna – concerned the legality of the contract as a whole! Theoretically, I could have a contract with a hitman, and, as long as there's an arbitration clause, it is out of your hands. The actual murder itself may be referable to court, as it is a matter of criminal law, but the contract, and the breach thereof, is still in the hands of the arbitrator.

Therefore, as it is legal to refer civil disputes to binding arbitration, then the contract is legal, period.

I now move on to what I perceive as the most likely reason that Wal-Mart accepted the contract: Unilateral mistake.

### There was no fraud, and, therefore, no unilateral mistake.

Allow me to cite the precedent-setting case of Beckton, Dickson, & Company v. Accu-Path Medical Laboratory, Inc (Case No. 01-1907). In it, the United States Court of Appeals for the Eighth Circuit stated that "Arkansas law requires fraud before rescinding or reforming a contract because of a unilateral mistake, see Westlund v. Melson, 647 S.W.2d 488, 489 (Ark. Ct. App. 1983)."

There was no fraud in any of this. I did not lie to them about anything. I told them everything, in black and white. It is their fault, for not actually listening.

As an *ad abundantiam*, I cite the semi-binding precedent of HealthEast Bethesda Hospital v. United Commercial Travelers of America (Case No. 08-3665). This was in the Eighth Circuit, but applies Minnesota state law, as that was the state that would otherwise have personal jurisdiction, but for the federal courts having jurisdiction, which is why I call this precedent "semi-binding."

Anyway, in that case, the Eighth Circuit Court of Appeals affirmed the ruling of the District Court for the District of Minnesota, which denied the defendants' affirmative defense of unilateral mistake. The reason for this denial is that "it was a sophisticated party that bore the risk of mistake and could have avoided it by investigating Hansen's policy." Remember, the district court's reasoning was affirmed, therefore, making this reasoning binding precedent.

As a result, defeating the affirmative defense of "unilateral mistake" is as easy as proving that Wal-Mart is as sophisticated a company, or more so, than the UCT, and proving that they could have easily avoided the mistake, if they had merely taken greater care.

The sophistication of Wal-Mart is a given. I do not even need to cite any sources; everyone knows that Wal-Mart is the biggest retailer in the world, and practically has a sinkhole of resources at their disposal.

Could they have easily avoided the mistake, if they had taken greater care? You tell me! I sent the offer to them, twice. On the second time, I explained to them what they were getting themselves into. It merely fell on deaf ears, but that is not my problem. They could have easily know what was going on, if they just took two minutes, upon actually getting around to reading my email, and actually read it, instead of just glancing over it, deciding that I'm in over my head, and ignoring it, entirely.

I am curious -- even eager -- to hear any other affirmative defenses that they might want to raise.

However, whether this contract is enforceable or not, there is one thing that this case is not, and that is a frivolous lawsuit. "Frivolous," in the eyes of the law, has a very different definition than in the eyes of the general public; case in point, McDonald's Coffee. To be frivolous, in the eyes of the law, it must be one that has absolute, positively, **no** possible legal basis, upon which it can be based. I have cited numerous case laws that affirm my position on this case, which means that there is a possible legal basis.

Wherefore, I respectfully pray that you promise to confirm the arbitration award that I have, due to the forfeit victory clause, or, alternatively, compel Wal-Mart to arbitrate the validity of the forfeit

victory clause with me, and award other relief as the court deems appropriate.

Sincerely,

David Stebbins

*David Stebbins*



David Stebbins
1407 N Spring Rd.
APT #5
Harrison, AR 72601

U.S. District Court
35 E. Mountain St
Room 510
Fayetteville, AR 72701