IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

HARRISON DIVISION

**DAVID STEBBINS**                                                                                         **PLAINTIFF**

vs.

**WAL-MART STORES, INC.**                                                    **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION

Comes now Plaintiff David Stebbins, who submits the following brief in support of the enclosed motion to confirm an arbitration award.

First, I would like to cover the Facts. Then, I will move onto the law.

### Facts

I contend the following facts:

On November 9, 2010, I sent Wal-Mart a formal offer for a contract. For this, I have no exhibit that I can mail in, because it is on video. Instead, I will give you a direct link, on the Internet, where you can see the footage of me sending this contract offer.

Here is exhibit A:

http://s270.photobucket.com/albums/jj93/dstebbin/?action=view&current=WalMartofHarrisonArkansas.mp4

The contract I sent them in Exhibit A states, among other things, the following:

1. Contacting me in any way constitutes their acceptance.

2. We agree to settle all legal disputes, not just those related to this contract, via semi-binding arbitration, where they are bound, but I am not, using the services of www.net-arb.com.

3. If they do not accept my offer to arbitrate within 24 hours (after they receive it), then I automatically win the amount requested, regardless of the merits of the case.

pg 2

See Exhibit B for the text of that contract. Notice, I have censored a good deal of the contract, because most of the terms are irrelevant to this case.

On the date of November 17, 2010, I received an email from Wal-Mart, which stated nothing but an invitation to call their regional office. See Exhibit C.

On the date of November 21, 2010, I sent Wal-Mart another email, reiterating what I was doing, and implying how they may escape being bound by the contract. See Exhibit D.

On the date of November 24, 2010, I received another email, from Wal-Mart, with the same reference number. This email contained the exact same text in its body as the email shown in Exhibit C. See Exhibit E for this.

I sent Wal-Mart an invitation to arbitrate a dispute for $660,000,000,000 (no, that is **not** a typo), on the date of November 24, 2010. See Exhibit F.

As of at least December 4, 2010, Wal-Mart had not accepted the invitation to arbitrate. See Exhibit G.

Therefore, provided that my statements of law are also true, I am entitled to have this arbitration award confirmed, per the forfeit victory clause in my contract with Wal-Mart.

Law

First, allow me to cover the basics. There are seven elements that a contract must possess in order to be valid and enforceable in a court. These elements are:

1. Offer
2. Acceptance
3. Consideration
4. Intent to be legally bound
5. Capacity (meaning, both parties must be capable of contracting)

6. Meeting of the minds

7. Legal (e.g. hitman contracts are not enforceable)

I assume that offer and capacity are not in dispute. Therefore, I will not comment on them beyond this two-sentence paragraph.

I will now move onto the second element of a contract: Acceptance.

**Wal-Mart accepted the contract on November 24, 2010.**

As stated in the motion, Wal-Mart contacted me to discuss a matter that may or may not be directly related to the contract. The contract explicitly stated that they agree to the terms, in the event that they initiate communications with me.

At first glance, this seems unconscionable. Wal-Mart does not even have so much as the opportunity to negotiate, correct?

To answer that question, first allow me to set the stage with some binding precedent: In 1999, in the employment discrimination case of Stafne v. Trevilla of New Brighton, Inc. (Case No. 99-3562), the United States Court of Appeals for the Eighth Circuit declined to rule on Ms. Stafne's plight regarding the judge's misallocation of the burden of proof in the "direct threat" exception. The Eighth Circuit Court of Appeals felt that the issue was moot, as Ms. Stafne failed to even establish a prima facie case of discrimination, meaning that she would have lost anyway. See Exhibit H. It took another seven years, in the 2006 case of EEOC v. Wal-Mart Stores, Inc. (Case No. 06-1583), when this question actually became pertinent, that the Eighth Circuit Court of Appeals actually decided to rule on it, and state that the defendant holds the burden of proof. See Exhibit I.

I say that to say this: Even though a legal question may seem important, and *should* be answered, eventually, the Stafne case sets binding precedent that a court must disregard all moot

points, even if they appear pertinent at first glance, and render decisions only on points that will actually make or break the outcome of the case at hand.

To that end, I pose this question: If Wal-Mart had responded with either an unambiguous rejection, or a counter-offer, would they have still been bound? We don't know; we don't care. The court need not rule on whether they could have been exempt if they had contacted me, but only to explicitly reject the offer, or make a counter-offer, because they did neither. Wal-Mart initiated communications with me, only to invite me for more communications.

It would be as if I emailed a friend of mine, with this formal offer for a contract, and, being the smartypants frat boy that this friend is, he responded saying "I'M COMMUNICATING WITH YOU! I'M COMMUNICATING WITH YOU!" over and over again. At that point, he probably would be deemed to have accepted the contract, even if the court would not have found acceptance if he made a genuine attempt to make a rejection or counter-offer, correct?

For this reason, I respectfully move that you expressly save, for another day, the question of whether or not an unambiguous rejection or counter-offer would have been deemed an acceptance of this contract, and, instead, rule on whether or not the actions they *did* take signified acceptance.

To that end, allow me to cite a persuasive precedent. This case is called Ticketmaster II v. Tickets.com, and took place in the United States District Court for the Central District of California. See Exhibit J. I will hereby abbreviate this case as "the Tickets case" or simply "Tickets" from here on out.

Tickets concerned a browse-wrap agreement – an online contract that binds the parties simply by browsing on that website. Browse-wrap agreements are distinguished from click-wrap agreements, which require the user to actually check a box that says "I agree to the terms of

service," prior to creating an account on that website. Click-wrap agreements are typically enforced quite consistently, but browse-wrap agreements are much more controversial.

However, Tickets seems to shine some light on that issue. The defendants in the case managed to get the claim dismissed, yes, but the court explicitly stated that the reason it dismissed the case was because the plaintiff had yet to prove that the defendants had actual knowledge of the terms and conditions of using the website.

This seems to hint at a critical matter of law: While you might be able to escape liability for a contract that you did not even see, once the plaintiff proves that the defendant did see the contract, and, after seeing the contract, still performs actions that signify their acceptance, then that's it; game over. Once the defendants in a contract suit see a contract (such as a a browse-wrap agreement, or a sign posted on a main door that says "Read this before entering,") and still perform actions that the contract states will signify acceptance, then they accept the contract, plain and simple. At that point, lack of acceptance is not going to get the defendants very far; they will have to plead something else, such as the lack of a different element, and/or an affirmative defense.

For example, in computers, there is a concept called "cookies." These monitor everything you do on a website; they are designed to give the surfer a customized experience, based on the surfer's unique surfing habits. However, in order to know about the surfer's unique surfing habits, the websites must monitor their surfing. This is accomplished with a small piece of software called "cookies."

Therefore, if a plaintiff in a breach of contract case concerning a browse-wrap agreement managed to use cookies to prove that the defendant had, at some point, read the terms of service, and did *not* immediately navigate away from that website, and never return, then the reasonable

person may assume that they accepted the terms of service.

However, holding a defendant to a browse-wrap agreement does not necessarily have to be so hard to prove. If the website looking to enforce a browse-wrap agreement had a link to their terms of use, not at the bottom of every webpage on their site, but at the top, then it would still be a valid and enforceable contract. The browsers do not have to click on the terms; they were in plain view, and that is enough.

Another example is a sign posted on a door that states "Read this before entering." If the sign is clearly visible, to the point where any reasonable person would see it, even if they do not stop and read it, then it is valid. At that point, if a person walks through the door, he will have accepted the terms stated on that sign, would he not? If security cameras showed that he actually stopped to read the sign, that would merely serve as a *ad abundantiam* – adding strength to an already valid case.

As I stated before, Wal-Mart performed an action that signified their acceptance to my contract on Wednesday, November 17, 2010. I reminded them of exactly what they were getting themselves into, on November 21, 2010, and then, on November 24, 2010, they performed actions that signified their acceptance to the contract, *again*!

On November 21, I laid everything out in black and white. I held nothing back. Even if they did not bind themselves on November 17, they definitely did on November 24. There are no more excuses.

Simply put, Wal-Mart accepted the contract, and that's all there is to it. Now, we move onto the third element of a contract: Consideration.

### Wal-Mart and I must arbitrate all legal disputes.

First, allow me to cite binding precedent: The Supreme Court case of Buckeye Check

Cashing Inc. v. Cardegna (to be abbreviated as "Cardegna" from here on out) states, without ambiguity, that, if a contract contains an arbitration clause, the arbitrator must decide the validity of the contract, unless the arbitration clause itself is being challenged. See Exhibit K.

The issue in dispute involved legality of a contract (violating Florida's usury laws), but the majority opinion clearly mandated, and I quote, "a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court." The word "validity" is underlined for emphasis.

The validity of a contract encompasses all seven elements of a contract.

Therefore, the consideration of the contract, in its entirety, is out of your hands. You must look at the contract as if it stated nothing but the following:

"By initiating communications with me, in any way [other than to explicitly reject this contract], you hereby agree to submit all legal disputes with me – not just those related to this contract – to semi-binding arbitration, using the services of www.net-arb.com, where you are bound, by I am not."

That is it. That is all you can consider in making your ruling. Even the validity of the forfeit victory clause is our of the court's hands. In the event that there is a dispute as to the validity of the forfeit victory clause, it is still something that the arbitrator must decide.

Therefore, there is sufficient consideration. We both save time and money by referring all legal disputes to arbitration, unless the legal disputes at hand is not referable to arbitration. That, in and of itself, is consideration. In fact, the consideration in an agreement to arbitrate is so blatant that it can often stand alone as its own contract (i.e. when parties agree to arbitrate a legal dispute that has already arisen, and only agree to arbitrate that one case). Granted, there is a lack of mutual consideration, but, as I will soon explain, even that will not help Wal-Mart.

Conclusively, there is sufficient consideration – albeit peppercorn consideration - in this contract, up to the point that the court is authorized to decide. Now, we move on to the fourth element of a contract: Intent to be legally bound.

### A reasonable person would have intended to arbitrate all cases with me.

Allow me to set the stage, not with binding precedent, or even persuasive precedent, for that matter, but with common sense that any jurist – even an amateur one, such as myself – would know: Intent to be legally bound is not based on each parties' subjective intent, but on the common law doctrine of the reasonable person. If a defendant in a contract case claims that he never expected the plaintiff to actually sue him over this contract, that is just his tough luck. A reasonable person would realize that there is an intent to be legally bound. If the court looks at each parties' subjective intent, do you have any idea the kind of floodgates you would be opening? Anybody could escape liability for virtually any contract, by merely claiming that they did not intend to be legally bound, and, then, it would be the plaintiff's neigh impossible burden to prove that the defendants did intend to be legally bound.

This burden is much easier to prove if the contract explicitly states that the parties agree to be bound. This contract did, indeed, state the ability to be bound. Therefore, there was an intent to be legally bound. Wal-Mart is better off pleading the lack of some other element of a contract, or some other affirmative defense.

As capacity is not in dispute, by any stretch of the imagination, I now move to the sixth element of a contract: Meeting of the minds.

### There is objective indication of assent.

I cite the 1995 Arkansas Supreme Court case of Thurman v. Thurman. Per the Erie Doctrine, this case sets binding precedent on this district court. This case has been cited,

numerous times, by Arkansas Appellate Court cases. The case states that "meeting of the minds" is not based on the parties' subjective understanding of the terms, but on "objective indicators of assent." I cannot find the exact text of Thurman, but there is a good reason for that: It was passed in the year 1995. Unless I pay a large fee, which I don't have, I can only look up cases that date as far back as 1996. I can, however, cite an Arkansas Court of Appeals case that makes direct reference to this AR Supreme Court case; I will do exactly that. I will cite the 2002 Arkansas Court of Appeals case of Shea v. Riley. See Exhibit L.

This phrase, "objective indicators of assent," seems to imply two things: First, the establishment of "meeting of the minds" is based on whether or not two reasonable people – as defined by common law – would have a meeting of the minds. Second, the phrase "objective indicators" seems to imply that, in Arkansas, meeting of the minds is neigh indistinguishable from "acceptance," which I have already established.

My original offer, as well as my reiteration, was clear and unambiguous. The contract offer that I made is in the same language that I have seen numerous contracts be in. No reasonable person, upon actually reading the contract (which, as I have established by citing the Tickets case, is a lot more moot than you may initially give it credit for) would have been confused as to the terms. Instead, it is much more plausible that Wal-Mart committed a unilateral mistake. However, as I will soon explain, the affirmative defense of "unilateral mistake" is not a valid affirmative defense.

I now move on to the seventh and final element of a contract: Legality.

### It is legal to refer civil disputes to arbitration.

As I have previously stated, the arbitration agreement is all that you have jurisdiction to consider. As a direct result, you must consider the legality of the arbitration clause, alone. In

fact, the very case that sets binding precedent on this issue – Cardegna – concerned the <u>legality</u> of the contract as a whole! Theoretically, I could have a contract with a hitman, and, as long as there's an arbitration clause, it is out of your hands. The actual murder itself may be referable to court, as it is a matter of criminal law, but the contract, and the breach thereof, is still in the hands of the arbitrator.

Therefore, as it is legal to refer civil disputes to binding arbitration, then the contract is legal, period.

I now move on to what I perceive as the most likely reason that Wal-Mart accepted the contract: Unilateral mistake.

**There was no fraud, and, therefore, no unilateral mistake.**

Allow me to cite the precedent-setting case of Beckton, Dickson, & Company v. Accu-Path Medical Laboratory, Inc (Case No. 01-1907). See Exhibit M. In it, the United States Court of Appeals for the Eighth Circuit stated that "Arkansas law requires fraud before rescinding or reforming a contract because of a unilateral mistake, see Westlund v. Melson, 647 S.W.2d 488, 489 (Ark. Ct. App. 1983)."

There was no fraud in any of this. I did not lie to them about anything. I told them everything, in black and white. It is their fault, for not actually listening.

As an *ad abundantiam*, I cite the semi-binding precedent of HealthEast Bethesda Hospital v. United Commercial Travelers of America (Case No. 08-3665). See Exhibit N. This was in the Eighth Circuit, but applies Minnesota state law, as that was the state that would otherwise have personal jurisdiction, but for the federal courts having jurisdiction, which is why I call this precedent "semi-binding."

Anyway, in that case, the Eighth Circuit Court of Appeals affirmed the ruling of the

District Court for the District of Minnesota, which denied the defendants' affirmative defense of unilateral mistake. The reason for this denial is that "it was a sophisticated party that bore the risk of mistake and could have avoided it by investigating Hansen's policy." Remember, the district court's reasoning was affirmed, therefore, making this reasoning binding precedent.

As a result, defeating the affirmative defense of "unilateral mistake" is as easy as proving that Wal-Mart is as sophisticated a company, or more so, than the UCT, and proving that they could have easily avoided the mistake, if they had merely taken greater care.

The sophistication of Wal-Mart is a given. I do not even need to cite any sources; everyone knows that Wal-Mart is the biggest retailer in the world, and practically has a sinkhole of resources at their disposal.

Could they have easily avoided the mistake, if they had taken greater care? You tell me! I sent the offer to them, twice. On the second time, I explained to them what they were getting themselves into. It merely fell on deaf ears, but that is not my problem. They could have easily know what was going on, if they just took two minutes, upon actually getting around to reading my email, and actually read it, instead of just glancing over it, deciding that I'm in over my head, and calling my bluff.

If you rule against me for this reason, Your Honor, not only will you violate clear binding precedent that states, without ambiguity, that fraud is prerequisite to relief on the basis of unilateral mistake, but you would be opening the flood gates for a ton of abuse. Virtually anyone could get off the hook, on a contract, because they didn't read it. If Wal-Mart 1) posted a sign on their front door, 2) that sign is in plain view, 3) the sign states that, by entering the store, the consumers agree to be bound by the following terms, and 4) a consumer simply ignores the sign, and walks into the store without blinking an eye, they should not be bound by the terms.

I now move on to the second most likely defense: The arbitration agreement lacks mutuality of obligation.

### Mutuality of obligation is a non-issue in federal court

I cite the 2008 case of Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC (Case No. 08-3448), or SSC v. AEDBS, for short. See Exhibit O. In this case, the United States Court of Appeals for the Eighth Circuit ruled that "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration."

So, at this point, it merely becomes a matter of establishing consideration.

I concede that the arbitration agreement only called for semi-binding arbitration, but that is all I need. Remember, in the case of SSC v. AEDBS, the arbitration agreement contained even less obligation, on the part of AEDBS, than mine does. AEDBS still retained the right to initially litigate any disputes, whereas I must initially refer all cases to arbitration. Only after the arbitration is over, may I decide whether to take that arbitration award, and run with it, or risk it all for a better judgment in litigation.

AEDBS had the option of whether or not to even so much as compel arbitration. They lacked a single commitment in the arbitration clause, alone. Therefore, the court had to look elsewhere for consideration. I, on the other hand, have to initially refer all cases to arbitration, unless the case cannot be arbitrated, as a matter of public policy.

I need but a single peppercorn of consideration, on my part, for the contract *as a whole* to be supported by consideration. The contract, as a whole, therefore, has consideration, negating the need for the arbitration agreement to have equality of obligation. I have established exactly that.

I am curious – even eager – to hear any other affirmative defenses that they might want to raise.

However, whether this contract is enforceable or not, there is one thing that this case is not, and that is a frivolous lawsuit. "Frivolous," in the eyes of the law, has a very different definition than in the eyes of the general public; case in point, McDonald's Coffee. To be frivolous, in the eyes of the law, it must be one that has absolute, positively, **no** possible legal basis, upon which it can be based. I have cited numerous case laws that affirm my position on this case, which means that there is a possible legal basis.

Wherefore, I respectfully pray that you promise to confirm the arbitration award that I have, due to the forfeit victory clause, or, alternatively, compel Wal-Mart to arbitrate the validity of the forfeit victory clause with me, and award other relief as the court deems appropriate.

Sincerely,

David Stebbins