

Exhibit O

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 08-3448

| | | |
|---|---|---|
| Southeastern Stud & Components, Inc., | * * * | |
| Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| American Eagle Design Build Studios, LLC, | * * * | |
| Appellant, | * * | [PUBLISHED] |
| American Eagle Communities, LLC; Salvatore R. Carabetta; CEI Investment Corporation; Little Rock Family Housing, LLC; Shaw Infrastructure, Inc., | * * * * * * | |
| Defendants. | * | |

Submitted: June 11, 2009
Filed: December 7, 2009

Before BYE, HANSEN, and BENTON, Circuit Judges.

HANSEN, Circuit Judge.

American Eagle Design Build Studios, LLC (AEDBS) and Southeastern Stud & Components, Inc. (SES) entered into a Subcontract Work Agreement (Subcontract), which contained an arbitration clause. After a dispute arose, SES filed a lawsuit against AEDBS. Over a year after SES first filed its complaint, AEDBS filed a motion to compel arbitration. The district court[1] denied AEDBS's motion to compel arbitration, and AEDBS now appeals. For the following reasons, we affirm.

I.

AEDBS was the prime contractor constructing housing on an Air Force base in Little Rock, Arkansas. On August 23, 2006, SES and AEDBS entered into the Subcontract, which stated that SES was to provide labor and materials to the housing project. The Subcontract contained an arbitration clause that said, "[a]ny dispute between [SES] and [AEDBS] arising out of this Agreement or breach thereof, . . . may, at the option of [AEDBS], be submitted to arbitration." (J.A. at 486-87.)

A dispute arose involving payment for work performed under the Subcontract. On June 26, 2007, SES filed suit against AEDBS and several other parties. AEDBS did not move to compel arbitration at that time but, over the course of the following year, answered SES's complaint, filed responses and objections to SES's request for production of documents and filed a motion for judgment on the pleadings without raising the issue of arbitration. AEDBS claims that during this period it did not believe it could enforce the arbitration agreement under Arkansas law. On July 15, 2008, SES filed a second amended complaint. At that point, following an unpublished decision by the United States District Court for the Eastern District of Arkansas, AEDBS asserts that it believed it could enforce the arbitration agreement. In its July 29, 2008, answer to AEDBS's second amended complaint, AEDBS raised arbitration

---

[1] The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

-2-

as an affirmative defense, and on September 3, 2008, AEDBS filed a motion to compel arbitration. Before the district court, SES argued that the arbitration clause was unenforceable because: (1) there was no mutuality of obligation as the decision to enforce the arbitration clause was left entirely to AEDBS; (2) AEDBS had waived its right to arbitration by participating in the litigation; and (3) SES would be prejudiced by the arbitration.

The district court denied AEDBS's motion to compel arbitration, finding that while the arbitration clause was enforceable despite its lack of mutuality, AEDBS had waived its right to arbitration and SES would be prejudiced by the arbitration. AEDBS appeals, arguing that it did not waive its right to arbitrate the agreement by participating in the litigation.

II.

In reviewing the district court's determination that AEDBS waived its right to arbitrate the agreement, "[w]e review de novo the legal determination of waiver but examine the factual findings underlying that ruling for clear error." Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007).

We note that there is a "'strong federal policy in favor of arbitration,'" such that "'any doubts concerning waiver of arbitrability should be resolved in favor of arbitration.'" Id. (quoting Dumont v. Saskatchewan Gov't Ins., 258 F.3d 880, 886 (8th Cir. 2001)). However, "[a] party may be found to have waived its right to arbitration if it: '(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'" Id. (quoting Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993)).

AEDBS asserts that, at the time SES filed its complaint against AEDBS, it did not believe that it had the right to arbitrate. According to AEDBS, before March

-3-

2008, Arkansas law required mutuality of obligation within the contract's arbitration agreement, even if there was sufficient mutuality within the rest of the contract. See Showmethemoney Check Cashers, Inc. v. Williams, 27 S.W.3d 361, 367 (Ark. 2000) ("Given the lack of mutuality to support the arbitration agreement, we hold the arbitration clause contained in the [contract] does not constitute a valid enforceable agreement to arbitrate . . . ."). AEDBS claims that it did not know it had the right to arbitrate until it discovered the March 2008 unpublished opinion, Enderlin v. XM Satellite Radio Holdings, Inc., No. 4:06-CV-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008) (unpublished). In Enderlin, the United States District Court for the Eastern District of Arkansas stated that "Arkansas law requiring mutuality within the arbitration paragraph itself is preempted by the [Federal Arbitration Act] because it places the arbitration clause on unequal footing with other contract terms that do not each have to be mutual." Enderlin, 2008 WL 830262, at *10. Before this, according to AEDBS, it believed the arbitration agreement was invalid because there was no mutuality of obligation. See Appellant's Br. at 18 ("[I]n the face of such adverse case authority, AEDBS did not believe (i.e. 'know') that it had a valid and enforceable right to arbitrate its dispute with SES despite the existence of the arbitration clause within its Subcontract with SES.").

However, as early as 1984 the Supreme Court held that the Federal Arbitration Act (FAA) "preempts a state law that withdraws the power to enforce arbitration agreements." Southland Corp. v. Keating, 465 U.S. 1, 16 n.10 (1984). Over a decade later, the Court again explained that "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)) (internal citations omitted). Thus, pursuant to Supreme Court precedent, it should have been clear to AEDBS that the arbitration agreement was at least arguably enforceable because Arkansas could not have

imposed additional requirements that applied only to arbitration agreements. Moreover, in 2003, five years before <u>Enderlin</u>, the United States District Court for the Western District of Arkansas stated that, "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration." <u>Scherrey v. A.G. Edwards & Sons, Inc.</u>, No. 02-2286, 2003 U.S. Dist. LEXIS 11010, at *10 (W.D. Ark. Apr. 15, 2003) (unpublished). Thus, in spite of AEDBS's assertions, <u>Enderlin</u> did not make new law; it merely correctly applied existing law. In fact, <u>Enderlin</u> could not have changed anything as one district court is not bound by the holdings of others, even those within the same district. <u>See, e.g., Gasperini v. Ctr. for Humanities</u>, 518 U.S. 415, 430 n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others."); <u>Jones v. Unum Life Ins. Co. of Am.</u>, 486 F. Supp. 2d 864, 867 (E.D. Ark. 2007) ("'[D]istrict court decisions are not treated as binding precedents in other cases. District court rulings have influence only to the extent that jurists in other cases find them convincing.'" (quoting <u>IBM Credit Corp. v. United Home for Aged Hebrews</u>, 848 F. Supp. 495 (S.D.N.Y. 1994))). As the district court correctly noted, "AEDBS was free at any time to make the same argument as the Defendant in <u>Enderlin</u>, but AEDBS did not." <u>Southeastern Stud & Components, Inc. v. Am. Eagle Design Build Studios</u>, No. 4:07CV00593, 2008 WL 4531706, at *2 (E.D. Ark. Oct. 9, 2008) (unpublished). Further, AEDBS drafted the Subcontract containing the arbitration agreement. <u>Cf. Ritzel Commc'ns</u>, 989 F.2d at 969 ("The Goodwin group drafted the Stock Purchase agreement that contains the arbitration provisions, and thus knew of the existing right of arbitration.").

AEDBS points to <u>Ackerberg v. Johnson</u>, 892 F.2d 1328 (8th Cir. 1989), in support of its argument that it did not knowingly waive its right to arbitrate because the "delay in filing a motion to compel arbitration was based on unfavorable or uncertain law." (Appellant's Br. at 22.) In <u>Ackerberg</u>, the defendants failed to file a motion to compel arbitration on a claim related to the Securities Act of 1933, 15